Garroway *v.* Garroway, Appellant.

Argued April 16, 1948. Before Rhodes, P. J., Hirt, Reno, Dithrich, Ross, Arnold and Fine, JJ.

*Clyde P. Bailey,* with him *Dane Critchfield* and *Bailey & Critchfield,* for appellant.

*John E. Evans, Sr.,* for appellee.

Opinion by Hirt, J., September 29, 1948:

The uncorroborated testimony of the libellant and of the respondent comprise the whole record of the evidence in this case. No other witnesses were called. The lower court found the "credibility" of libellant's testimony of indignities "overwhelming" as against the denials of the respondent and accordingly entered a decree of divorce on that ground alone. The charge of cruel and barbarous treatment properly was ignored. The case was heard by a judge who saw and heard the parties. But notwithstanding that advantage with the lower court, our considered judgment is that the charge of indignities has not been sustained. This appeal is not to be disposed of, alone, on a comparative estimate of the credibility of the libellant and respondent. There are other circumstances which, with admissions of the parties, adversely affect libellant's right to a decree.

Libellant was admitted to the bar in 1919 and secured an appointment as trust officer of a bank in 1920. He continued in that position for twenty years. The parties were married in 1922 after a courtship which began eight years before. For most of that period libellant worked during the day and attended law school at night; respondent taught school; they continued to keep company largely from habit. Their only child, a daughter, was born in 1924 and is now 24 years of age. There were differences but the marriage was reasonably successful during the first years. Libellant left the marital bedroom in 1925 and continued to occupy a separate room in their home until March 1928 when he left the respondent. The separation was final. The daughter has lived with her mother and both of them have been supported by libellant since the separation. The daughter spends part of the time with her father and their relations are cordial.

Libellant's bill of particulars and his testimony charge his wife with an almost continuous series of acts of indignities during, but limited to, the last three years

immediately preceeding the separation. He testified that she habitually found fault with him and complained of the condition of the house in which they lived; that she vilified libellant's mother and frequently threatened libellant with violence; that she expressed regret at having married him and ridiculed his business and religious activities. He testified also that she continually nagged him and "refused to give him any peace or quiet"; that at times her language was vile and malicious and that she frequently assaulted him by striking or kicking him. The lower court accepted his testimony at face value and found that "Her conduct amounted to almost constant and hysterical verbal abuse [and] this, at times, developed into physical violence also".

Libellant's testimony loses probative force when viewed in the light of the circumstances: This action was not brought until January 1946, more than 17 years after the alleged indignities of which libellant complains. The delay has a direct bearing upon the good faith of the libellant and his motive in bringing the action since a decree of divorce would terminate an existing court order for his wife's support. Cf. *Scott v. Scott*, 135 Pa. Superior Ct. 505, 7 A. 2d 36. The delay raises the question whether the action was brought by libellant "in sincerity and truth for the causes mentioned" in the complaint as the law requires, or on the other hand "for the mere purpose of being freed and separated" from the respondent. His excuse for the delay, that he postponed bringing the action until his daughter had completed her schooling, is not impressive. A decree of divorce would not have changed the essential character of the separation in any degree nor added to its finality. Moreover, (and this fact is significant) he had brought a prior action in divorce in June 1928, three months after leaving respondent. True, he later discontinued that action but only after his wife had entered an appearance and evidenced an intention of contesting his right to a decree. The inference is not unreasonable that he lacked

confidence in his ability to obtain a divorce in an action contested by his wife while the incidents of their married life were fresh in the minds of both of them.

The source of the text of libellant's testimony also challenges his good faith. Beginning in February 1927, he made daily notes of respondent's conduct, insofar as it suited his purpose. The libellant's testimony in this case is based largely on these voluminous notes which he was permitted to read into the record. The inference is inescapable that he, at least as early as 1927, had in mind bringing a divorce action and that he started then to prepare his case. It may be assumed that the daily notes which he made do not put a construction on the acts of his wife most favorable to her, and the fact that libellant considered it necessary to make any notes of his wife's conduct casts doubt on the seriousness of her acts. One ordinarily does not need memoranda to aid him in recalling indignities which made his life burdensome. Many of the incidents complained of by libellant are too insignificant even in cumulation to support the charges of indignities. Much of his testimony is a narrative of general statements, unaccompanied by the actual facts and therefore of no probative value. Cf. *Sleight v. Sleight,* 119 Pa. Superior Ct. 300, 181 A. 69. Specific acts are charged but libellant's testimony of serious misconduct of his wife may not be accepted literally. And the physical violence, which the lower court referred to, insofar as it was established by credible evidence, was not serious nor was it wholly one-sided. Libellant admitted striking the respondent on at least one occasion.

Respondent was at a disadvantage in that she was not confronted with libellant's carefully prepared notes until the time of the trial. But we think she was reasonably frank in her testimony: She was unable to remember some of the incidents related by libellant and she denied that others occurred. She admitted a somewhat querulous attitude on her part toward libellant during the three

years before the separation. Some of her complaints were justified. The rented house in which they lived was in need of repair; libellant admitted that the condition of the porch was dangerous. There was ground for the suspicion, regardless of its truth, that libellant was interested in another woman, and he did not deny the accusation. Daily, during the hours when libellant was home he monopolized the attention of his infant daughter to the exclusion of respondent who was equally attached to the child. To refer to an extreme incident: He celebrated Christmas Eve with the child in 1926 after locking the door to the room and refusing admittance to respondent. The testimony of the respondent throughout indicated that she had affection for her husband. And his contention that she at times threatened him with divorce is thoroughly rebutted in a letter written by her to him following the separation. This letter was admitted in evidence on the offer of the libellant. On the whole it favors the respondent's case and it clearly indicates a sincere desire on her part to save the marriage by a resumption of cohabitation.

But even if we assume the truth of libellant's testimony in material respects as to his wife's acts, he still, in our view, is not entitled to a divorce. It is incredible that she so conducted herself without fault on his part as he would have us believe. We think the record supplies the answer. She testified that for the last three years libellant ignored her completely "as though she did not exist", and did not speak to her at all. He admits "the last two or three years I kept my mouth shut". This admitted studied neglect undoubtedly affected respondent's conduct toward her husband. And the rule that indignities provoked are not ground for divorce in the absence of excessive retaliation (*Philo v. Philo,* 154 Pa. Superior Ct. 563, 36 A. 2d 833) has some material bearing.

The testimony in this case proves an unhappy marriage and nothing more. Libellant has failed to make out

a case by that clear and satisfactory evidence essential to a decree of divorce. Both of the parties are high-strung temperamentally and are unsuited to each other. Neither is wholly innocent of the causes which resulted in the failure of their marriage.

Decree reversed and libel dismissed at libellant's costs.